CHARLES CONKLIN, RESPONDENT, v. KANSAS CITY PUBLIC SERVICE CO., APPELLANT.—41 S. W. (2d) 608.

Kansas City Court of Appeals. April 6, 1931.

*T. W. Imes* and *Atwood, Wickersham, Hill & Chilcott* for respondent.

*Charles L. Carr* and *Mont. T. Prewitt* for appellant.

ARNOLD, J.—This is an appeal from the action of the circuit court of Jackson County, Missouri, setting aside a former judgment rendered therein, involving a claim for compensation under the provisions of the Missouri Workmen's Compensation Act. The facts forming the basis of the claim are as follows:

The employer (defendant) is a corporation engaged in operating street cars upon its various lines in the city of Kansas City, Jackson County, Missouri, and in maintaining shops and other necessary adjuncts in connection therewith. On February 3, 1928, the claimant, an employee of defendant company at the company's shops located at Tenth street and Lister avenue in said city, at about 12:20 P. M. of said day, during the lunch period, was injured by being struck in the eye by a baseball bat thrown by a fellow employee while playing a game of indoor baseball, and the sight of the eye completely destroyed. Claimant was employed as a machinist and his regular place of work was at a bench machine in the machine shop which was maintained on the premises of defendant's plant located as above stated. The game was being played in one of defendant's buildings known as the paint shop which was about fifty feet from the machine shop where claimant, on the day in question, ate his lunch as was his custom. The players consisted of a team from the machine shop and one from another division of defendant's employees known as the "stock men" and claimant was watching the game when the injury occurred. The games had been played regularly for a period of four or five years prior to the injury in question. The shops cover a space about the dimensions of a city square block, 400 to 500 persons being employed therein. The various sections of the employees such as machinists, painters, boiler-makers, etc., each had a separate ball team. The evidence shows the employer did not furnish the balls and bats for the men but permitted the games in the paint shop which

were played with the knowledge and consent of the company and some of defendant's foremen were players on the teams. Plaintiff's rate of pay was fifty cents an hour for nine hours work a day and he was not paid for the lunch period which was from twelve o'clock noon to 12:30.

It appears that on Christmas day, or the day preceding, there was a game *de luxe*, during which the players and those employees who looked on were paid full time while thus engaged. The employees were not required to attend or engage in the games as players, nor remain on the premises and, in fact, many of them did leave the premises for their lunches. On the day in question, while claimant was eating his lunch, his shop overseer, Mr. Briar, said to him, "Come on and go to the ball game" or words to that effect, and after he finished his lunch plaintiff went to the paint shop to watch the game. It had been his custom to attend the games when the machine shop team played some other team and he had attended six or seven such games. It is in evidence that the bats used by the men were supposed to have straps or loops upon them through which the hand of the batter was thrust to prevent the bat from slipping out of the hand. There was no strap on the bat which injured claimant, though other bats in use in the game were equipped with straps. The testimony shows the injury was inflicted unintentionally and was wholly an accident.

On April 20, 1928, claimant filed his claim for compensation before the compensation commission. On June 21, 1928, a hearing was held before Orin H. Shaw, a member of the commission, and on July 18, 1928, said commissioner made his findings of fact and special finding rulings of law therein, and found in favor of the employer. The special finding is as follows:

"The evidence in this case shows that at the time of this accident the employee was not engaged in the course of his employment; and the accident did not arise out of or in the course of the employment. His claim for compensation is therefore denied."

On July 23, 1928, claimant filed his application with the commission for a review, and on November 30, 1930, there was such a rehearing before Commissioner Shaw, and additional evidence taken. On January 18, 1929, a final award was made by the full commission, in favor of the employer and the award of July 18, 1928, was affirmed. On February 5, 1929, claimant filed his notice of appeal with the commission, and the cause with a complete record and transcript, was filed in the Jackson county, circuit court. The cause came on for hearing in Division 2 of said court, upon the transcript of the proceedings before the commission and on October 5, 1929, the award was affirmed. On October 9, 1929, and in due time, claimant filed his

motion for a new trial and rehearing and on April 17, 1930, the trial court sustained the motion, set aside its former judgment, and entered the following order:

"Judgment of October 5, 1929, set aside upon rehearing award of Workmen's Compensation Commission Commissioner reversed for the reasons (A) that the facts found by the Commissioner do not support the award; (B) that there was not sufficient competent evidence in the record to warrant making the award, and the cause is remanded to the Workmen's Compensation Commission for further proceedings and award not inconsistent with this decision and judgment."

A timely motion for a new trial was overruled and defendant appeals.

The material facts of the case are not disputed. The basic charge of error is that the court erred in rendering its judgment of April 17, 1930, and this charge is attempted to be supported by three supplemental assignments which, being so closely allied, we shall consider together, and in doing so it will be necessary to refer to the provisions of the compensation act itself. Section 44 of the act (sec. 3342, R. S. 1929), provides:

"Upon appeal no additional evidence shall be heard, and in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

"1. That the commission acted without or in excess of its powers.

"2. That the award was procured by fraud.

"3. That the facts found by the commission do not support the award.

"4. That there was not sufficient evidence in the record to warrant the making of the award."

Section 3301, Revised Statutes 1929, provides:

"If both employer and employee have elected to accept provisions of this chapter, the employer shall be liable irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person."

It is urged by appellant in its supplemental assignment numbered 2, that the final award of the commission was proper as was the original judgment of the circuit court of October 5, 1929, upholding the same, because (1) the commission did not act without or in excess

of its powers in making the award; (2) because said award was not procured by fraud·; (3) because the facts found by the Compensation Commission were sufficient to support the award; (4) because there was sufficient competent evidence in the record to warrant the award made by the commission.

In its supplemental assignment numbered 3, it is urged the court erred because its judgment, as now recorded, is in violation of the general provisions of the laws of Missouri, including that part of section 44 of the act, which provides "Upon appeal no additional evidence shall be heard and in the absence of fraud, the findings of facts made by the commission within its powers shall be conclusive and binding." And because the facts found by the commission do not support its final award; because there was sufficient evidence in the record to warrant the commission in making its final award; because there is an absence of fraud, and because the commission did not act without or in excess of its powers in making its final award.

Supplemental assignment numbered 4, charges the court erred in rendering its final judgment, because the final award of the commission was based upon its finding to the effect that "the evidence in this case shows that at the time of the accident the employee was not engaged in the course of his employment, and the accident did not arise out of or in the course of the employment and the claim for compensation was therefore denied." That these findings of facts made by the commission within its powers are conclusive and binding upon the circuit court and this court. It has been held such findings of fact have the force and effect of a verdict of a jury whose sole·prerogative is to determine the facts. This review therefore is necessarily limited to the question of the application of the law to the facts found, and as to this, defendant insists the court erred in its final judgment. No claim is made that the original award was procured by fraud, nor that the commission acted without or in excess of its powers, but the charge is made that the facts found by the commission do not support its award and there was not sufficient competent evidence in the record to warrant the award.· This was the view of the trial court. On this appeal the employer insists there was sufficient competent evidence to support the award in its favor and that the trial court erred in setting aside its original judgment.

As we read the record and briefs, the decisive question is whether claimant's injury arose "out of and in the course of his employment." [Sec. 3301, R. S. 1929.] It is defendant's contention that under the statutes authorizing the Workmen's Compensation law in Missouri and the interpretations thereof already given the act by the appellate courts in this State, it is the duty of the commission to hear testimony of witnesses and make findings of facts; that in so doing they are

acting in the capacity of a jury; that their findings of facts, providing there be sufficient evidence in the case, absent fraud; are binding upon the circuit court as well as other appellate courts having jurisdiction. It is pointed out that in the case at bar the commissioner who first heard the case, as well as the full commission, found the facts to be that the injury of the employee claimant did not arise "out of and in the course of his employment" and is therefore not compensable.

Claimant's position in this respect is stated in his brief as follows: In order for the employee to recover in this case it is necessary that the injury arose out of and in the course of employment. To hold that before an employee may recover compensation he must actually be performing some act which he is strictly employed to perform, and that any variance therefrom would create an injury that is not compensable, would be so narrowing the law as to make it a burden and an injustice to the working man. In order to carry out substantially the unquestioned purpose of the act, the broader view is that any injury, arising from any source generally incident to the master's conduct of the business, or the generally recognized practices about the premises, where the contract of employment is being performed, should be construed as arising out of and in the course of the employment.

The circumstances under which claimant herein was injured are stated in the evidence and have already been described. The question before us is whether the injury upon which the claim is based arose out of and in the course of claimant's employment. Our attention has not been called to any case, nor have we been able to find one, directly decisive of this point under a similar state of facts. Numerous citations are made of cases in foreign jurisdictions which promulgate contrary rulings on the questions here involved. The employer cites cases from foreign jurisdictions supporting its contentions, to some of which we shall refer, involving the construction of the words "arising out of and in the course of the employment," in statutes similar to ours. One of the cited cases is known as the McNicol's case, 215 Mass. 497, and it is there said:

"It is sufficient to say that an injury is received 'in the course of' the employment when it comes while the workman is doing a duty which he is employed to perform. It 'arises out of' the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by reasonable persons familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot be

fairly traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

In the case of Mary Sellers v. Construction Co., 124 Kans. 550, 554, the court held that if the cause takes its rise from some injury extraneous to the employment the injury does not arise "out of" the employment and judgment should be denied on that ground, not on the ground the employment is not the proximate cause. To the same effect is the case of Hazelwood v. Mfg. Co., 271 S. W. 687, a Kentucky case, and also the case of W. U. Tel. Co. v. Owens, 146 N. E. (Ind. App.) 427. In the case of Plouffe v. Rubber Co., 211 N. Y. App. Div. 298, 207 N. Y. Supp. 373, the claimant took offense because a fellow workman, in passing claimant while at work, pulled the latter's pencil from behind his ear; claimant then began slapping his fellow workman in the face and the man retaliated by striking claimant on the jaw with sufficient force to cause injuries which resulted in an abscess of the jaw. An award was made on the basis of facial disfigurement. On appeal it was held the injury did not arise out of or in the course of his employment, first, because claimant was the aggressor and, second, because insofar as he was defending property, the property was his own.

In the case of Heater v. Railway Co., 210 N. Y. App. Div. 497, 206 N. Y. Supp. 443, the claimant was employed in a machine shop of the defendant railroad company. An implement with which he was working was broken and before the accident had been taken to the tool room to be repaired. On the day of the accident claimant had been waiting for this instrument from seven until nine A. M., when he went to the tool room to see if it was ready and found it was not. He then started on a tour of the railroad yard, going first to the electric light house and talking with an employee there; from there to the welding room and thence to the water crane, and from there to see another employee about taking him on a pleasure trip. This latter employee had gone to the round house and as claimant was walking along, facing an approaching engine, he slipped on the track and the engine passed over his leg, necessitating an amputation below the knee. For this accident he received an award. Pointing out that the place of the accident was 600 feet distant from the claimant's place of work

and that the entire trip was taken to serve his own purposes and pleasure, the court held the injury was not compensable.

To a similar effect is the case of Stimell v. Typewriter Co., 210 N. Y. App. Div. 311, 206 N. Y. Supp. 188, where the claimant was a clerk in the mail department of his employer's business, which was the selling of typewriters. On the roof of the building there was space furnished by the employer to the employees for recreation during the lunch hour. This claimant went upon the roof where there was a ladder extending up the side of the water tank for use by employees in repairing or inspecting the tank. He went upon the roof, not for the purpose of recreation but to pose for a picture of himself to be taken by his request. While he was so doing, one of the rungs of the ladder broke, causing him to slip and fall some twenty-eight feet, sustaining injuries for which he sought compensation. It was held the claimant had stepped outside his employment by climbing the ladder for the purpose aforesaid and doing a voluntary act which approximately led to the accident and which had no relation to his employer's interest. Accordingly the award was reversed and the claim dismissed.

The same principle is announced in Hornby's case, 147 N. E. 577 (Mass.), where the claimant was employed as watchman and also had charge of the checking room in his employer's store. At the employer's request he was appointed a special police officer, which necessitated his going to police headquarters to be sworn in. While on his way for that purpose, traveling on a public street, he was struck and injured by an automobile. It was held this injury did not arise out of the employment and on appeal an award in his favor was reversed.

Under the Federal Act, in the case of Charles F. Lancaster, 2d Annual Report of the U. S. Compensation Commission, it is said:

"Injuries sustained by employees during lunch hour when they are at liberty to do as they please, are not compensable under the Federal Act."

And in the case of Schlector, U. S. Dept. of Labor Reports, 1908 to 1915, p. 331, the following rule is announced:

"An employee, on the premises during the noon hour, stopping to pick up a basket ball from the street to return it to some players in the field, was struck by an automobile; it was held that he was not injured in the course of his employment."

In the case at bar it is argued it was no part of claimant's duty to watch the ball game and that such act had no relation to the work he was hired to do; therefore the risk was not incidental to the employment and the injury is not compensable. [Citing Rochford's case (Mass.), 124 N. E. 891; Savage case (Mass.), 110 N. E. 283; Moore case (Mass.), 114 N. E. 204; O'Toole case (Mass.), 118 N. E. 303.]

[See, also, Urban v. Topping Bros., 184 N. Y. App. Div. 633, 172 N. Y. Supp. 432; Coronado Beach Co. v. Pillsbury (Calif.), 158 Pac. 212.]

In Markell v. Shoe Co., 221 N. Y. 493, 116 N. E. 1060, the claimant employee, while seeking instructions from another employee who was leaning over, placed his arm about the fellow employee's neck and in doing so a pencil in the pocket of the employee seeking instructions pierced the eye ball of the fellow employee. The court held that the injury, though received in the course of the employment, did not arise out of the employment, for it resulted from the sportive act of a fellow employee and was not incident to the employment.

These citations furnish ample support for the employer's contention, but we find the rulings in many other states not in accord therewith, and many cases support the arguments of claimant. In his brief, claimant calls attention to the fact that the rule of law undoubtedly is that the findings of facts made by the commission in these cases has the effect of the verdict of a jury; that the duty of the circuit court on appeal in compensation cases is to pass on matters of law; that the court is in the same position as when passing on a demurrer to the evidence in an ordinary civil case; that the employer's contention is that on the whole record, there is sufficient competent evidence to justify the commission in finding against the claimant. The uncontroverted evidence presented is summarized by claimant as follows:

"The main uncontradicted facts briefly are that Conklin was a regular employee and on the appellant's premises on the date of the injury; that the accident happened during the noon period and that he did not receive pay for that time off; that he ate his dinner on the premises, but was not required to do so; that the indoor baseball game which he attended had been played on the premises for four years, and with the knowledge, consent and encouragement of employer; that only employees played and attended; that the bat was thrown during the progress of the game."

On these facts it is claimant's contention the commission erred in holding the injury did not arise out of and in the course of the employment; that, as a matter of law, the evidence did establish the fact the injury arose out of and in the course of the employment, and from a recognized activity which had become incidental to the employment. Claimant asserts the compensation act should be liberally construed. [Citing Howes v. Stark Bros. Nursery, 22 S. W. (2d) 839, 844; Kaletha v. Hall Mer. Co., 196 N. W. (Minn.) 261.] However, it was held in Stone v. Blackmer, etc. Co. (Mo. App.), 27 S. W. (2d) 459, 460:

"While it is true our act commands that it shall be liberally con-

strued with a view to the public welfare, that does not authorize the allowance of a claim that lacks some of the essential elements required by the act.''

In this connection claimant argues the purpose of the compensation act was to do away with the old system of personal injury actions, which were based upon negligence of the master and substitute a more humane compensation system, the purpose of which was, irrespective of negligence, to provide compensation for an employee during his disability period, without regard to the question of negligence. According to the express terms of the act, all provisions thereof shall be liberally construed. It is said in Howes v. Stark Bros., etc., Co., 22 S. W. (2d) 839, 844:

''It is the manifest purpose of the Compensation Act to compensate all accidental injuries to workmen arising out of and in the course of their employment. Under the act the employee gives up a very substantial consideration for the limited compensation assured in the act. This is strikingly illustrated in the present case, where plaintiff's injury resulted in the loss of his right leg, and the disfigurement of his face by an ugly scar, besides other minor injuries, not to mention the great pain and anguish he must have suffered. . . . Thus the plaintiff gets as compensation for the loss of his leg, and for his disfigurement, and his suffering, the net sum of slightly less than $2,000. If his injuries had resulted from the grossest negligence of the defendant, his compensation would be no more. In view of such substantial consideration yielded by the employee, the act provides that the employer shall, without regard to negligence, compensate the employee in a limited amount for any injury received by him arising out of and in the course of his employment. The act should be liberally construed in furtherance of that end. The act itself provides that it shall be so construed. To give it the narrow construction insisted upon by the defendants would defeat in a large measure its manifest purpose.''

The facts in the Howes case are that the claimant was an employee of the defendant as a teamster, defendants being in the orchard and nursery business, operating several hundred acres of land in connection with said business, near Louisiana, Missouri, in which city claimant resided. For a considerable period, the employer had furnished transportation for its employees to and from the city of Louisiana; the employees were not paid for the time they were being so transported and were not required to ride in the company's bus in going to and from their work. After the claimant's duties for the day had ceased and he had put up his horses, he was crossing a public road which ran through the premises of defendant, for the purpose of boarding the bus to return to his home, and while in the act of cross-

ing the road, he was struck by an automobile driven by a third person and injured. A claim for compensation was duly filed and was defended on the ground the injury did not arise out of and in the course of the employment. There was an award by the commission which was sustained by the court on appeal on the ground that, under the circumstances, the hazard was one peculiar to the employment and not common to the general public; that there was a causal relation existing between the injury and the employment. In Smith v. Mer. Co., 14 S. W. (2d) 470, 472, the court said:

"Likewise it is commonly held that an injury may be said to arise 'out of' the employment when it is reasonably apparent, upon a consideration of all the facts and circumstances, that a causal connection exists between the conditions under which the employee's work is required to be done, and the resulting injury. In other words, an injury arises out of the employment if it is a natural and reasonable incident thereof, even though not foreseen or anticipated; but, in all events, it must be the rational consequence of some hazard connected therewith."

An analysis of these cases indicates the controlling point is whether, under all the circumstances, the injury arose from something which had become an incident to the employment. In this connection claimant, in the case at bar, argues the uncontradicted evidence shows the employer, by sponsoring and fostering these ball games, was raising the morale of the employees, causing them to be better satisfied and therefore more efficient; and that the fostering of the game also tended to keep the employees on the premises so they would return to work at the appointed hour and be present in the event of an emergency—all to the ultimate benefit of the employer, though such benefits could not actually be sold to consumers—and accordingly the ball games were a recognized incident to the employment. Plaintiff cites Thomas v. Proctor & Gamble Co., 104 Kan. 432, 179 Pac. 372, a case analogous to this one. There, the claimant was an employee of a manufacturing company, paid by the hour, working from seven A. M. to twelve noon, and from 12:30 to 5:30 P. M. She was not paid during the noon hour and during that time was at liberty to leave the premises, but remained there; after eating her lunch, she engaged with other employees, following a custom known to and approved by the employer, in riding on a small truck. Her injury was caused by falling from the truck which was drawn by fellow employees. Together with other girl employees, the claimant had been playing upon these trucks for a considerable period of time prior to the date of the injury and the custom was known to the foreman, in that case it was held the accident occurred in the course of and arose out of the employment. The theory upon which the case was decided was that while

the employees were at liberty to leave the premises during the noon hour, yet as the time for lunch was rather short, it was to the interest of the employer to have the employees remain on the premises, presumably to be at hand when work was resumed so there might be no delay, and in that, the employer obviously was interested; that this playing had become an established custom without objection on the part of the employer and thereby was incident to the employment, and the injury arose out of and in the course of the employment. The court said in that case (1. c. 439) :

"It would perhaps not unduly extend the principle to say that the employer might, under some circumstances, have an interest in his employee's taking suitable exercise in a brief interval allowed for refreshment and rest.

"Inasmuch as·the evidence may be regarded as establishing that the play in which plaintiff was injured had become a settled custom, with the knowledge and indeed the express approval of the foreman in charge of the department, and without objection on the part of anyone, the court is of the opinion that her injury may be regarded not only as having occurred in the course of her employment, but as having arisen out of it."

To the same effect is the ruling in the case of White v. Stock Yards Co., 104 Kan. 90, 177 Pac. 522. In that case there was a bit of "horse play." As a prank, other employees attached a charged electric wire to a door knob after working. hours and claimant had dressed to go home. On his way out of the premises he grasped the charged door knob and was injured. The evidence shows the same pranks had been played for some time prior thereto, and defendant's foreman knew about it. The court, in holding there was compensable injury, said that, while the general rule is that injuries received as the result of a prank, or joke of other employees are not compensable, the rule is otherwise when the employer knew of these acts and permitted them to continue; that they. then became risks incident to the employment.

The rule is similarly declared in other jurisdictions. [Haller v. City (Mich.), 162 N. W. 335; Johnson Coffee Co. v. McDonald (Tenn.), 226 S. W. 215; Rayner v. Furniture Co. (Mich.), 146 N. W. 665; Kaletha v. Mer. Co. (Minn.), 196 N. W. 261; Larson v. Com. Co. (Calif.), 224 Pac. 744; In re Bollman (Ind. App.), 126 N. E. 639; Granville v. Coal Co., 76 Pa. 335; Employers, etc. Co. v. Industrial Com., 230 Pac. 394, 76 Colo. 84; Donlon v. Brewing Co., 179 N. Y. Supp. 93; Chemical Co. v. Smith (Tenn.), 238 S. W. 97; In re Von Ette (Mass.), 111 N. E. 696; Milwaukee, etc., Fuel Co. v. Ind. Com., 150 N. W. 998; Terlecki v. Strauss, 85 N. J. L. 454, 89 Atl. 1023; Taylor v. Milling Co., 129 Kan. 370, 282 Pac. 729; Corpora

v. K. C. Pub. Serv. Co., 129 Kan. 690, 284 Pac. 818; Sugar Co. v. Shraluka (Ind.), 116 N. E. 330.] In the case last cited, the court said:

"Such acts as are necessary to the life, comfort and convenience of the workmen, while at work, though personal to himself, and not technically acts of service, are incidental to the service; and an accident occurring in the performance of such acts is deemed to have arisen out of the employment. Such acts are regarded as inevitable incidents of the employment, and accidents happening in the performance . of such acts are regarded as arising out of and in the course of the employment."

[See, also, Hollenback v. Hollenback, 181 Ky. 262, 204 S. W. 152; Sundine's case, 105 N. E. 433; Ackerson v. Jennings Co., 140 Atl. 760.] Defendant herein cites a number of cases from foreign jurisdictions wherein compensation has been denied, but an examination shows they were cases wherein the injury arose out of an independent agency, outside of duties due the employer, from something to which the employer gave no sanction and over which he had no control.

Defendant cites a Missouri case in support of its contention, to-wit, Hager v. Publishing Co., 17 S. W. (2d) 578, wherein compensation was denied. The point there in controversy was whether or not an injury, caused by an employee throwing a stick in anger and caused injury to another employee, was compensable. There was no contention that the throwing of sticks was settled practice, approved by the employer; and upon this theory, compensation was denied.

The rulings in foreign jurisdictions must be held to be conflicting in the application of the law to the facts similar to those in the case at issue. We must hold, however, that the gareater weight of authority is to the effect that where an injury arises out of a settled practice or condition know to the employer, with which there is a causal relation between the injury and the employment, the injury is compensable. We therefore hold there was no error in the action of the trial court in setting aside its judgment of October 5, 1929, and rendering its judgment of April 17, 1930.

The judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.;* absent.