# MARCH, 1940.

JIM MITCHELL, RESPONDENT, v. OTTO W. KNUTSON ET AL., APPELLANTS.—137 S. W. (2d) 648.

Springfield Court of Appeals. March 5, 1940.

*Robert E. Seiler* for appellant.

*Kelsey Norman* for respondent.

SMITH, J.—We take from the abstract of the record before us the following statement of this case, which, with slight alterations, we use.

This is an appeal from the judgment of the Circuit Court of Jasper County, at Joplin, affirming the order of the Missouri Workman's Compensation Commission made by said commission on March 31, 1938, in a certain proceeding for lump sum settlement by Jim Mitchell, as claimant, v. Otto W. Knutson, employer, and Liberty Mutual Insurance Company, Insurer, and wherein said commission awarded claimant the sum of $3000 in a lump sum. A final award as to disability of claimant and compensation therefor had previously been made by said commission on November 24, 1937, wherein said commission found said employee was permanently and totally disabled and entitled to compensation in the amount of $16.03 per week for 300 weeks and thereafter the sum of $6 per week for life, subject to credit for $16.03 per week for 156 weeks or $2484.65, which sum had previously been paid said employee, and also subject to an attorney's fee of $4 per week for 144 weeks following date of said award in favor of Kelsey Norman, attorney for employee, same to be commuted and paid in a lump sum of $545.62, thereby reducing the compensation of said employee from $16.03 to $12.03 per week during said period of 144 weeks. No appeal was taken from this award and thereafter the claimant filed his application for lump settlement, out of which matter this appeal arises, as hereinafter set forth.

The application for lump sum settlement was filed before the Missouri Workmen's Compensation Commission by the employee on February 14, 1938, and alleged as follows:

"Comes now Jim Mitchell, above named, and states and shows to the Commission that there is now due to him under the Final Award, made and entered in this cause, compensation for 128 weeks at the rate of $12.03 per week, and compensation thereafter for the remainder of his life at the rate of $6 per week, and that his expectancy of life is 19½ years, according to recognized mortality tables.

"Petitioner further shows that under the award above mentioned, there is due to him more than $6500.

"Petitioner further shows that his living expenses require the use of every penny of the compensation now being paid to him weekly, under the Award made herein, and that after the payments have been reduced from $12.03 per week to $6 per week, said compensation will not be sufficient to pay his necessary living expenses, and that he will thereby become a charge upon the community in 'which he lives, unless his request for a lump sum settlement, as herein contained, is granted.

"Petitioner further states that he is the owner of a copyrighted formula for the manufacture of a spray used in killing flies around dairy farms, and that, prior to his injury herein, he was manufacturing said spray and had worked up a fairly good trade in the sale thereof, to farms and dairymen, in which said business he was making a reasonable profit.

"Petitioner further states that in the manufacture of said spray the ingredients he uses are odorous, and objectionable to persons not interested therein, who live in close proximity to where the spray fluid is mixed and made ready for market, and that therefore he is not able to manufacture his product in rented premises.

"Petitioner further states that he does not own a home of his own, and that his said product can be manufactured and mixed at his home, and that the manufacture and mixing of said product does not require any physical or mental effort on his part, and does not require any supervision on his part, but that his wife, who is thoroughly familiar with said product, can supervise the manufacture, mixture and sale of his said product, provided a suitable location can be had for the manufacture thereof.

"Petitioner further states that there has been submitted to him for sale, all of Lots 24, 25 and 26, Leonard's Addition to the City of Joplin, which said property is located on one of the main traveled highways entering the City of Joplin, and is well improved with a five-room modern home and other out buildings, which said property is ideally located for the manufacture and mixture and sale of his fly spray aforesaid, and also is a suitable home for this petitioner and his family.

"Petitioner states that said property has been offered to him at the sum and price of $2001, which this petitioner states is a bargain price for the premises.

"Petitioner further states that in addition to the sum necessary for the purchase of said property, approximately the sum of $1000 will be required to purchase his equipment and supplies for the manufacture and sale of his spray, and petitioner states if said sum is awarded him he can earn sufficient from the sale of his product to more than pay his necessary living expenses, and that thereby he will not become a public charge upon the people of the State of Missouri.

"Wherefore, Petitioner asks that a hearing be granted him on his application for a lump sum settlement, and that upon such hearing, the Commission award him at least sufficient of the balance due him under said Award for the purchase of said property, and an additional sum of $1000 for the purchase of the materials and supplies necessary to manufacture and start the sale and distribution of his said fly spray."

The hearing on application for lump sum settlement was held before Honorable Edward C. Lynch, Referee of Missouri Workmen's Compensation Commission, at the court house in the City of Joplin, Missouri, on March 11, 1938. The hearing was passed on by the full commission; there was no award or finding made by the referee.

The order on said hearing was made on March 31, 1938, by Missouri Workmen's Compensation Commission and provided as follows:

"On November 24, 1937, the commission issued a final award on hearing in which employee was awarded the sum of $16.03 per week for 300 weeks and thereafter $6 per week for life. This award was made subject to credit for amount previously paid employee and also was subject to an attorney's lien which reduced the compensation from $16.03 to $12.03 per week during the remainder of the 300-week period.

"On February 14, 1938, employee filed Application for Lump Sum Settlement, in which he requested that he be allowed $3000 in a lump sum. This matter was set for hearing on March 11, 1938, and we find from the evidence that said request should be and is hereby allowed as follows:

"By virtue of the award dated November 24, 1937, there remains due on this date, March 31, 1938, 127 weeks at $12.03, and thereafter the sum of $6 per week for life. The sum of Three Thousand ($3000) Dollars is hereby allowed in a lump sum, same representing the present value of 127 weeks at $12.03 and 341 weeks at $6 per week. The insurer will not, therefore, be liable for further compensation until 468 weeks subsequent to March 31, 1938, when, if employee is living, payments will be resumed at $6 per week."

Appeal to Circuit Court of Jasper County was thereafter taken by employer and insurer from said order in due form and in due time, and on June 4, 1938, the secretary of the Missouri Workmen's Compensation Commission lodged with the clerk of the Circuit Court of Jasper County, Missouri, at Joplin, all the documents and papers on file in the matter before the commission, together with a transcript of the evidence and the order, as provided by law.

The aforesaid lump sum order and award of the commission was affirmed and judgment rendered affirming and confirming said award by the Honorable Wilbur J. Owen, Judge of Division Two of the Circuit Court of Jasper County, Missouri, sitting at Joplin, on May 27, 1939, and during the regular April, 1939, term of said court

An appeal from the circuit court was thereafter duly taken and duly perfected by the employer and insurer and duly allowed by the circuit court to the Springfield Court of Appeals on May 27, 1939, and during the regular April, 1939, term of said circuit court.

The case was finally presented to this court and orally argued on January 9, 1940.

The attorney for respondent files a motion here asking that we follow Rule 21 of this court and dismiss the appeal in this case for failure of the appellant to comply with Rule 15, in that it is alleged that none of the exhibits offered by the plaintiff and received in evidence has been incorporated in or made a part of the abstract of the record. The appellants counter and move that the respondent's motion to dismiss the appeal be not considered because the respondent did not notify appellants or their attorneys of record of his intention to file said motion to dismiss, five days before filing the same, as provided by Rule 25 of this court.

Since the parties appeared before us and argued the case on the merits, we shall consider the case as presented. We quote the three assignments of error as printed in appellants' brief as follows:

### I.

"The commission erred in making the order allowing the lump sum award and the circuit court erred in affirming the commission's order for the reason that as a matter of law there was not sufficient competent evidence in the record to warrant the making of the lump sum award.

### II.

"The order of the commission and judgment of the circuit court affirming the order should be reversed or remanded because the total amount of compensation due respondent has been materially reduced by regular weekly compensation payments which have been made by the appellants under the original award of compensation for total and permanent disability while the application for a lump sum award, the appeal to the Circuit Court of Jasper County and this present appeal have been pending. Appellants admit this may be a novel assignment of error, but submit there is no other way to raise the point where there is involved a continuous, running award, such as made in the original final award of total and permanent disability made by the commission herein.

### III.

"The commission erred and the circuit court erred in affirming the commission's order for the reason that the order of the commission was without or in excess of its powers in that it forever bars appellants from having the original total disability award of the

commission reviewed by the commission on the ground of change of condition of respondent, as provided by law.''

As shown above, the first assignment complains that there was not sufficient competent evidence in the record to warrant making the lump sum award.

There were only two witnesses used by the respondent in addition to his own testimony. The first of these was Clarence L. Stephenson, a real estate and insurance man, who testified as to the value of the property that respondent wanted to buy. He said:

''This property is located on East 7th Street in Joplin. East Seventh Street is on Highway 38. The property covers 150 feet on 7th Street and 170 feet north and south, about an acre of ground. The improvements are a five-room bungalow in good condition and bath and garage. The garage is a two-car garage, about 16 x 20. Has agreed to sell this property to claimant for $2001 provided the Commission will allow it. This is a very reasonable price; the property was appraised a short time ago at $2500. House now occupied by the owner and is in good condition. Replacement value of improvements is about $2850. Value of land alone around $1200.''

Jim Mitchell on his own behalf testified that he had a patent issued by the United States government covering a formula for the manufacture of a fly spray or insecticide known as ''Zip,'' that he had studied chemistry for approximately a year at a government agricultural and chemical laboratory in Kansas City, and had spent $450 or $500 in educating himself in that line, and that he had gotten up an automatic spraying machine for spraying stock. He described this machine showing that stock sprayed themselves as they walked by the machine. He testified that he had made and used this spray before he had become incapacitated, and that he had quit making it because he wasn't physically able to do it and that he had, shortly before that, had inquires for it from a number of people. That he knew men who were familiar with it who wanted to put it on the market for him, if he had a place to make it. He said that when he was making it in a limited supply, he made approximately $15 to $18 per week, and that while he was physically unable to do the work himself, yet he was able to direct and manage the business if he could secure a place of his own, where he could make the product and promote the sale thereof. The abstract before us shows that he testified as follows:

''Thinks $1000 will be plenty to get into production. Believe that will buy the containers and necessary ingredients and equipment. Thinks place on 7th Street is ideal in a way, more than one, as to adaptability for the manufacture and convenience for the sale of the product. There are no houses rented close to it. Is nothing straight west of it. Can occupy the dwelling on the property as his residence. Would manufacture this spray in this two-car garage.

That is plenty of room. Does not require installation of any machinery, just a vat to pour the chemicals in and drum to draw it off in. Garage has a partial concrete floor. Figures this would put him on more than one highway and on the direct road to the stockyards. It is on 71 Highway and new 38 Highway and on the direct road to the stockyards. Stockmen usually come by the place. Has enough labels for a year's run, but would have to buy all my chemicals and smaller cans and mixing vats. That is what wants the $1000 for.''

He testified that he was injured in 1934, and that prior to this time he had manufactured this ''Zip;'' that he hadn't made any of it since 1936, and that when he made the last of it he hired a fellow to help him, and that he felt able to supervise the. making of it, and that with the help of his wife, they could manage the business. He wanted the $3000 asked for, to buy the place, and the vats, etc., so that he would have a permanent location of his own for the purpose of having a home and for making the spray and disposing of the products, and that he would be unable to do so profitably living in rented premises, and that he now pays $15 per month rent for living quarters. He testified that he was familiar with the number of insecticides that was being made, and that if he had a permanent place, he could produce his material and sell it and make a living.

His wife, Cynthia Ann Mitchell testified that she was familiar with the mixture and how it is made, and that with the advice of her husband she could supervise and manufacture the mixture. That the property sought to be bought was suitable for their home and they could manufacture the mixture on the place and manage the sale and distribution of the same. She also said that her husband had no other income except his compensation.

There were no other witnesses used on either side. The evidence as presented by claimant was not contradicted or rebutted by any evidence. The Commission entered a general award commuting the compensation payments to the $3000 requested by the respondent.

It is our conclusion that under circumstances such as shown here that there were shown ''unusual circumstances'' which bring this case within the provisions of section 3346, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., page 8282). And without extending this opinion, it is our conclusion that under undisputed facts as here presented, the lump sum computation of compensation award is authorized by the Workmen's Compensation Act. [England v. Missouri Gravel Co. (Mo. App.), 129 S. W. (2d) 50; Stolbert v. Walker-Jamar Co., 84 S. W. (2d) 213.]

We think there is no merit to the contention made under the third assignment, which we have quoted above; and we hold this point against the appellants. This conclusion is based upon the

holdings in the following cases: Wims v. Hercules Contracting Co., 123 S. W. (2d) 225; England v. Missouri Gravel Co., 129 S. W. (2d) 50, and cases therein cited; Oard v. Hope Engineering Co., 64 S. W. (2d) 707.

The second assignment as above quoted is rather "a novel assignment of error," and one that cannot finally be determined by this court. This court is bound by the evidence as presented to the trial court and as shown by the abstract as presented to us. We have not been cited any case, nor have we found one where this particular question has arisen, if in fact any weekly payments have been made since the order of commutation. It seems to us that the judgment of a lump sum payment should not be averted by an appeal having been made and weekly payments continued. Such a procedure might render void and of no effect the provision of the statutes providing for a lump sum settlement. The statutes provide, that under unusual circumstances, a lump sum payment shall be made. Such unusual circumstances were shown to the satisfaction of the commission and the circuit court, and the evidence presented to us is sufficient to affirm that judgment. What then should be done if weekly payments have been made pending this appeal? It is our conclusion that the lump sum amount of $3000 as found by the Commission and the circuit court should be paid, and that the cause should be remanded to the Commission for adjustment of such deferred payments as may be thereafter due as provided by section 3340, Missouri Statute Annotated, page 8273, taking into consideration only the effects the previous weekly payments will have upon such deferred payments, and not to affect in any way the payment of the lump sum judgment, and interest thereon. The lump sum judgment should be affirmed as to the amount, but the cause should be remanded with direction to submit the matter to the Commission to determine the amount and number of deferred payments that may be due, after considering the weekly payments, if any, that have been made while this cause has been pending. [See Carlton v. Henwood (Mo. App.), 115 S. W. (2d) 172, 180.]

The judgment as so amended is affirmed, and the cause remanded. *Tatlow, P. J.,* and *Fulbright, J.,* concur.